**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

---

| | |
|---|---|
| IN RE: CP4 Defective Fuel Pump Litigation | MDL-_____ |

---

**BRIEF IN SUPPORT OF THE CP4 PLAINTIFFS' MOTION
FOR TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT
OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED
OR CONSOLIDATED PRETRIAL PROCEEDINGS**

## I.   INTRODUCTION

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, plaintiffs in *In re: General Motors LLC CP4 Fuel Pump Litigation*, No. 4:18-cv-07054-JST (N.D. Cal.); *Farlow v. Ford Motor Co.*, No. 3:18-cv-06967-JD (N.D. Cal.); *Click v. General Motors LLC*, No. 2:18-cv-00455-NGR (S.D. Tex.); *Stevens v. Ford Motor Co.*, No. 2:18-cv-00456-NGR (S.D. Tex.); *Berry v. FCA US LLC*, No. 2:19-cv-00023-HGT (S.D. Tex.); *Ginebra v. General Motors LLC*, No. 1:18-cv-25209-FAM (S.D. Fla.); *Nunez v. Ford Motor Co.*, No. 1:18-cv-25211-UU (S.D. Fla.); *Chapman v. General Motors LLC*, 2:19-cv-12333-TGB (E.D. Mich.); and *Droesser v. Ford Motor Co.*, 2:19-cv-12365-JEL (E.D. Mich.) (collectively, the "CP4 Plaintiffs"), respectfully move the Panel for an order transferring the actions listed on the attached Schedule of Actions, as well as any tag-along actions or other cases that may be filed asserting related or similar claims (collectively the "Related Actions" or "CP4 Defect Actions"), in an industry-wide fashion to the Northern District of California or the Eastern District of Michigan for consolidated or coordinated pretrial proceedings.

Alternatively, the CP4 Plaintiffs respectfully move the Panel for an order transferring the Related Actions into three separate Multi-District Litigations ("MDLs") before the same judge—against Ford, GM, and FCA, respectively—in the Northern District of California or the Eastern

District of Michigan for consolidated or coordinated pretrial proceedings. Two of the Related Actions are pending in the Northern District of California—one before the Honorable Jon S. Tigar (*In re: General Motors LLC CP4 Fuel Pump Litigation*, No. 4:18-cv-07054-JST (N.D. Cal.)), and one before the Honorable James Donato (*Farlow v. Ford Motor Co.*, No. 3:18-cv-06967-JD (N.D. Cal.)). Two of the Related Actions are pending in the Eastern District of Michigan—one before the Honorable Terrence G. Berg (*Chapman v. General Motors LLC*, 2:19-cv-12333-TGB (E.D. Mich.)), and one before the Honorable Sean F. Cox (*Droesser v. Ford Motor Co.*, 2:19-cv-12365-SFC (E.D. Mich.)).

The ten CP4 Defect Actions pending in five different federal district courts involve approximately eighty-six named Plaintiffs and thousands more unnamed class Plaintiffs who allege economic loss based on their purchase or lease of defective diesel-engine vehicles manufactured by Defendants, General Motors LLC ("GM"), Ford Motor Company ("Ford"), and FCA US LLC ("FCA").[1] The CP4 Defect Actions concern the defective "CP4" high-pressure fuel pump manufactured by Bosch (a German automotive component-parts supplier who distributed the CP4 to all U.S. manufacturing entities named herein). The CP4 fuel pump is equipped in ***all*** of the Affected Vehicles[2] manufactured by Ford, GM, and FCA. The CP4 fuel pump contains a latent defect that exposes drivers of the Affected Vehicles to serious and life-threatening safety risks, and put simply, purchasers and/or lessees of the Affected Vehicles never would have purchased or leased said vehicles had they known that their vehicles contained the CP4 fuel pump defect, or at the very least they would have paid significantly less for them.

---

[1] *See In re Ford Motor Co. Defective Spark Plug & 3-Valve Engine Prods. Liab. Litig.*, 844 F. Supp. 2d 1375, 1376 (J.P.M.L. 2012) (granting transfer and consolidation of three cases); *see also In re: Rust-Oleum Restore Mktg., Sales Practices. and Prods. Liab. Litig.*, 84 F. Supp. 3d 1383, 1383–84 (J.P.M.L. 2015) (granting transfer and consolidation of five cases in five districts).

[2] *See* Exhibit A (listing the make and model year for the "Affected Vehicles").

The Bosch-supplied CP4 fuel pump is incompatible with the specifications for U.S. diesel fuel in terms of lubrication and/or water content, and it struggles to lift a volume of fuel sufficient to lubricate itself. As a result, the pump is forced to run dry and destroy itself as air bubbles allow metal to rub against metal. The pump deposits metal shavings and debris throughout the fuel injection system and the engine until it suddenly and cataclysmically fails without warning, further contaminating the fuel delivery system with larger metal fragments. Such catastrophic failure can and has caused vehicles to shut off while in motion, rendering the vehicles unable to be restarted because the vehicles' fuel injection system and engine component parts have become completely contaminated with metal shards. This catastrophic failure results in an expensive repair ranging from $8,000–$20,000, which is in vain because the repair merely replaces a failed defective pump with the same defective pump, failing to truly ameliorate the issue so long as the vehicle continues to use U.S. diesel fuel.  The U.S. consumer complaints speak for themselves, and are detailed at length in the pending CP4 Defect Actions.

Each of the CP4 Plaintiffs, both individually and on behalf of the proposed CP4 state classes, purchased or leased one or more of the Affected Vehicles without having any knowledge of this ticking time bomb in their vehicles. Certain CP4 Plaintiffs have already experienced catastrophic failure of the CP4 fuel pump in their vehicles, while others have not, but regardless *none* of the CP4 Plaintiffs would have purchased the Affected Vehicles had they known that this defect inherently existed in these vehicles prior to purchase or lease. In purchasing or leasing the Affected Vehicles, the CP4 Plaintiffs and class members relied on the representations and omissions of Ford, GM, or FCA, who represented and warranted that the Affected Vehicles were compatible with American diesel fuel and fit for their ordinary use.

The CP4 Plaintiffs and class members all allege claims based largely on the same factual background, those claims being the consumer-based causes of action of fraud (including fraud by misrepresentation, concealment, or omission), breach of state consumer protection laws, unjust enrichment, breach of express and implied warranties, and Magnusson-Moss Warranty Act violations. The CP4 Plaintiffs and class members commonly allege that Defendants engaged in fraud by selling the Affected Vehicles equipped with a defective high-pressure fuel pump manufactured by Bosch, and by concealing the defect from consumers. As explained below, because the cases involve numerous common questions of fact and law, transfer for centralized proceedings in one federal district court will achieve efficiencies in discovery and motion practice, preserve judicial resources, and alleviate the risk of inconsistent pretrial rulings.

The Northern District of California is the most appropriate forum for consolidated or coordinated pretrial proceedings. Californians make up the majority of all potential class members, and are the second largest group of Affected Vehicle owners in all fifty states. Two of the CP4 Defect Actions (one of which was previously consolidated between two cases) are currently pending in the Northern District of California.[3] The case posture in *In re: General Motors LLC CP4 Fuel Pump Litigation* is the furthest along of all the CP4 Defect Actions, as the Court has already ruled upon GM's motion to dismiss Plaintiffs' Amended and Consolidated Complaint and allowed Plaintiffs' claims to proceed. *See* Order re: Def.'s Mot. Dismiss, *In re: General Motors LLC CP4 Fuel Pump Litig.*, 3:18-cv-07054-JST, Doc. 51 (N.D. Cal. July 2, 2019). In addition, the

---

[3] Specifically, there are two CP4-related class actions pending in the Northern District of California. The first is *In re: General Motors LLC CP4 Fuel Pump Litigation*, No. 4:18-cv-07054-JST (N.D. Cal.), which is the result of the consolidation of two previously pending actions against GM in the Northern District of California, *Moonan v. GM LLC*, No. 4:18-cv-07054-JST (N.D. Cal.), and *Smith v. GM LLC*, No. 3:19-cv-00021-JCS (N.D. Cal.). The second case is against Ford, styled *Farlow v. Ford Motor Co.*, No. 3:18-cv-06967-JD (N.D. Cal.).

Northern District of California will provide a convenient location in a major metropolitan area with ready access from every region of the country, centralize the actions in the court most likely to advance the litigation in the shortest amount of time, and permit the assignment of a judge who is experienced in MDL and other complex litigation.

If not the Northern District of California, then the Eastern District of Michigan is an appropriate forum for consolidation or pretrial proceedings. The Related Actions pending there represent the most state classes of Affected Vehicles. Further, the Eastern District of Michigan is home to all three Defendants.

For these reasons and those below, the Panel should grant the CP4 Plaintiffs' motion.

## II.   BACKGROUND

### A.   The CP4 Defect Allegations

Ford, GM, and FCA have manufactured millions of diesel vehicles equipped with high-pressure fuel injection pumps that are proverbial ticking time bombs, wholly unbeknownst to unassuming American consumers who pay top dollar for these vehicles' fictitious "durability," "longevity," and "topnotch fuel economy." The pump's inability to withstand U.S. diesel fuel allows metal to rub against metal until the engine suddenly and cataclysmically fails without warning, further contaminating the fuel delivery system. This "catastrophic" (*i.e.*, complete and total) pump failure can occur as early as "mile 0," as the pump disintegration process begins at the very first fill of the tank, and starts damaging the vehicle's fuel injection system and engine immediately upon the vehicle's first use. This failure results in an outrageously expensive repair bill, all for a repair that will not truly ameliorate the issue so long as the vehicle is using U.S. diesel fuel. Thus, the CP4 Plaintiffs and other Class members have suffered from a defect that existed in the Affected Vehicles at the time of purchase and are seeking economic recovery for this

manifested and immediately damaging defect, in addition to any and all consequential damages stemming therefrom.

### B.      The Related Actions

All of the Related Actions involve one or more putative classes of affected individuals.

1.      *Click v. General Motors LLC*, **No. 2:18-cv-00455-NGR (S.D. Tex.),** asserts CP4-based claims under Texas law on behalf of eleven named plaintiffs, individually and as class representatives of similarly situated individuals. The complaint asserts claims for (1) fraud by omission/misrepresentation; (2) violations of the Texas Deceptive Trade Practices-Consumer Protection Act; (3) unjust enrichment; (4) breach of the implied warranty of merchantability; and (5) violations of the Magnusson-Moss Warranty Act. Following a pretrial conference before the Honorable Nelva Gonzales Ramos, the Court entered a Scheduling Order on May 28, 2019. Plaintiffs' Motion for Class Certification is due on March 6, 2020. The Class Certification Hearing will be held on June 24, 2020. The case is set for a jury trial on July 17, 2021.

2.      *Stevens v. Ford Motor Co.*, **No. 2:18-cv-00456-NGR (S.D. Tex.),** asserts CP4-based claims under Texas law on behalf of two named plaintiffs, individually and as class representatives of similarly situated individuals. Like *Click*, the *Stevens* complaint asserts claims for the same five causes of actions. The initial scheduling conference occurred on March 22, 2019, before the Honorable Nelva Gonzales Ramos. On May 17, 2019, a Scheduling Order was entered by the Court—providing deadlines for class certification/merits discovery and Plaintiffs' class certification brief, December 16, 2019, and January 10, 2020, respectively. A class certification hearing is currently set for March 24, 2020. The depositions of plaintiffs are scheduled for August 26, 2019, and September 6, 2019. Ford has filed a motion to dismiss the complaint, which is fully briefed and pending (Docs. 31, 32, 36).

3. ***Berry v. FCA US LLC***, **No. 2:19-cv-00023-HGT (S.D. Tex.),** asserts claims stemming from four named plaintiffs, individually and as class representatives of similarly situated individuals. Like *Click* and *Stevens*, the *Berry* complaint asserts claims for the same five causes of action. In addition, Plaintiff Kevin Lee Berry is bringing a claim for breach of express warranty both individually and on behalf of an express warranty "sub-class"—individuals who experienced a catastrophic failure of the CP4 pump yet were denied warranty coverage for repairs. FCA has filed a motion to dismiss the complaint, which is fully briefed and pending (Docs. 33, 35, 36). On July 10, 2019, the Court entered a Phase One Scheduling Order providing Plaintiffs' expert reports are due on December 27, 2019, and Defendant's expert reports are due on January 24, 2020.

4. ***Farlow v. Ford Motor Co.***, **No. 3:18-cv-06967-JD (N.D. Cal.),** asserts claims on behalf of six named Plaintiffs, both individually and on behalf of those similarly situated, for economic losses sustained due to the CP4 fuel pump defect. Specifically, the complaint alleges claims for (1) fraud by concealment; (2) violations of the California Unfair Competition Law; (3) violations of the Consumer Legal Remedies Act; (4) unjust enrichment; (5) breach of the implied warranty of merchantability; (6) breach of express warranty; and (7) violations of the Magnuson-Moss Warranty Act. On January 18, 2019, Ford filed a motion to dismiss the complaint, which is fully briefed and pending (Docs. 15, 40, 41). In addition, the parties have met and conferred pursuant to Fed. R. Civ. P. 26, and their joint Rule 26 Report was submitted on Thursday, February 7, 2019. The Case Management Conference is scheduled for August 29, 2019. The parties have exchanged initial discovery.

5. ***In re: General Motors LLC CP4 Fuel Pump Litigation***, **No. 3:18-cv-07054-JST (N.D. Cal.),** is the consolidation of two cases that were filed against GM in the Northern District of California. The first, *Moonan v. General Motors LLC*, No. 4:18-cv-07054-JST (N.D. Cal.), was

brought by thirty-four named plaintiffs, individually and on behalf of those similarly situated, for economic losses sustained due to the CP4 fuel pump defect. Specifically, the *Moonan* complaint alleged claims against GM based on (1) fraud by concealment; (2) violations of the California Unfair Competition Law; (3) violations of the Consumer Legal Remedies Act; (4) unjust enrichment; (5) breach of the implied warranty of merchantability; and (6) violations of the Magnuson-Moss Warranty Act. The second, *Smith v. General Motors LLC*, No. 3:19-cv-00021 (N.D. Cal.), asserted similar allegations and claims. On January 22, 2019, the Honorable Jon S. Tigar issued a Related Case Order reassigning the *Smith* case to his Court (Doc. 24). On February 20, 2019, the Court entered an agreed-upon Stipulation and Order consolidating the *Smith* and *Moonan* cases under the case caption *In re: General Motors LLC CP4 Fuel Pump Litigation*, No. 3:18-cv-07054-JST, before the Honorable Jon S. Tigar (Doc. 34).   On February 27, 2019, the *Moonan* and *Smith* Plaintiffs filed an Amended and Consolidated Complaint against GM, naming twenty-four Plaintiffs bringing claims on behalf of themselves and those similarly situated (*id.* at Doc. 36). The parties briefed GM's April 15, 2019 motion to dismiss Plaintiffs' Amended and Consolidated Complaint (*id.* at Docs. 39, 44, 48). Judge Tigar held a hearing on the motion to dismiss on June 27, 2019, and issued an Order Regarding Defendant's Motion to Dismiss on July 2, 2019 (*id.* at Doc. 51). On July 5, 2019, the Court issued an Order setting a Telephonic Case Management Conference for September 27, 2019, and requiring the parties to submit a joint case management conference statement by September 25, 2019 (*id.* at Doc. 52). Under the Standing Order for All Judges of the Northern District of California, the parties must confer and attempt to agree upon a multitude of case management issues ahead of the conference, including, *inter alia*: the preservation and production of electronically stored information; the scope of anticipated

discovery and proposed limitations or modifications to the discovery rules; a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f); and a proposed trial plan.

6.    ***Dawson v. General Motors LLC*, No. 3:19-cv-08680-AET-LHG (D.N.J.),** asserts claims on behalf of two named Plaintiffs, both individually and on behalf of those similarly situated, for economic losses sustained due to the CP4 fuel pump defect. On July 22, 2019, GM's Motion to Dismiss was granted with leave to amend (Doc. 22). The amended complaint is due on August 26, 2019 (*id.*).

7.    ***Nunez v. Ford Motor Co.*, No. 1:18-cv-25211-UU (S.D. Fla.),** asserts claims on behalf of 12 named Plaintiffs, both individually and on behalf of those similarly situated, for economic losses sustained due to the CP4 fuel pump defect. Specifically, the complaint alleges claims for (1) fraud by omission/misrepresentation; (2) violations of the Florida Deceptive and Unfair Trade Practices Act; (3) unjust enrichment; (4) breach of the implied warranty of merchantability; and (5) violations of the Magnuson-Moss Warranty Act. On January 29, 2019, Ford filed a motion to dismiss the complaint, which is fully briefed and pending (Doc. 30). The Case Management Conference is scheduled for September 6, 2019, before the Honorable Ursula Ungaro.

8.    ***Ginebra v. General Motors LLC*, No. 1:18-cv-25209-FAM (S.D. Fla.),** asserts claims on behalf of twelve named Plaintiffs, both individually and on behalf of those similarly situated, for economic losses sustained due to the CP4 fuel pump defect. Specifically, the complaint alleges claims for the same five causes of action asserted in *Nunez*. On April 3, 2019, GM filed a motion to dismiss Plaintiffs' First Amended Complaint, which is fully briefed (Doc. 27) and scheduled for hearing on September 13, 2019, before the Honorable Magistrate Judge Lauren Fleischer Louis.

9.      *Droesser v. Ford Motor Co.*, **No. 19-cv-12365 (E.D. Mich.),** asserts claims on behalf of eight named Plaintiffs, both individually and on behalf of those similarly situated, for economic losses sustained due to the CP4 fuel pump defect. Specifically, the complaint alleges claims based on forty-eight states' respective state consumer laws, implied warranty laws, and fraud.

10.     *Chapman v. General Motors LLC*, **No. 19-cv-12333 (E.D. Mich.),** asserts claims on behalf of five named Plaintiffs, both individually and on behalf of those similarly situated, for economic losses sustained due to the CP4 fuel pump defect. Specifically, the complaint alleges claims based on forty-eight states' respective state consumer laws, implied warranty laws, and fraud.

## III.    <u>THE PANEL SHOULD CENTRALIZE THE RELATED ACTIONS</u>

### A.    **Common Questions of Law and Fact**

The CP4 Plaintiffs, individually and on behalf of all others similarly situated, have brought claims against Ford, GM, and FCA for fraud by concealment, violations of state consumer protection laws, breach of implied and express warranties, violations of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301), and for unjust enrichment. The common legal questions will include whether the Affected Vehicles are defective, whether Plaintiffs and similarly situated class members have suffered economic loss and if so, the damages to which they are entitled.

The CP4 Defect Actions are being pursued against common Defendants and challenge the *same course of conduct.* The basic facts alleged in the Related Actions are virtually the same.[4]

---

[4] Indeed, the defect description and overall allegations are basically synonymous. *Compare, e.g., Nunez* Amended Complaint ¶¶ 16-19, 20-23, 24-29, 32, 34-38, 61-67 (No. 1:18-cv-25211-UU (S.D. Fla. Jan. 4, 2019), Doc. 5), *with Ginebra* First Amended Complaint ¶¶ 26-29, 31-33, 35-40, 43, 44-46, 49, 92-98 (No. 1:18-cv-25209-FAM (S.D. Fla. Feb. 27, 2019), Doc. 21), *and Berry* First Amended Complaint ¶¶ 33-36, 38-40, 42-45, 48, 51-55, 101, 103-108 (No. 2:19-cv-00023-

The CP4 Plaintiffs contend that the automotive manufacturer Defendants knew or should have known that the Bosch-manufactured CP4 high-pressure fuel injection pump in the Affected Vehicles was incompatible with U.S. diesel fuel and therefore the Defendants never should have designed, manufactured, and distributed the Affected Vehicles to an unknowing American public. Further, all ten Related Actions similarly contend that Defendants were aware of the seriousness and extent of the CP4 defect and concealed their knowledge of the defect from consumers. Finally, they all allege that the Defendants' failure to address the CP4 defect has resulted in severely diminished values of the Affected Vehicles.[5] Therefore, based on these overlapping factual issues, the Related Actions should be transferred and consolidated or coordinated before one Judge.

The Panel has allowed the centralization of multiple class actions against multiple defendants engaged in substantially similar conduct into an industry-wide MDL. *See In re: 100% Grated Parmesan Cheese Mktg. and Sales Practices Litig.*, 201 F. Supp. 3d 1375, 1378 (J.P.M.L 2016) (denying requests for separate MDLs, reasoning that a single MDL would be the "most appropriate vehicle")*; see also In re Checking Account Overdraft Litig.*, 626 F. Supp. 2d 1333, 1335–36 (J.P.M.L. 2009) (industry-wide centralization); *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d 1379, 1382 (J.P.M.L. 2011) (consolidating seventeen actions against at least twelve defendants in one district).

More importantly, the Panel has found that centralization of pretrial proceedings is warranted in product liability suits involving component parts because they involve common issues best addressed in an MDL. *See. e.g.*, *In re: Takata Airbag Prods. Liab. Litig.*, 84 F. Supp. 3d 1371, 1372 (J.P.M.L. 2015) (consolidating cases where "Plaintiffs allege[d] that Takata and the

---

NGR (S.D. Tex. Apr. 23, 2019), Doc. 29) (containing essentially identical factual allegations aside from the interchangeable use of the terms "Ford," "GM," and "FCA").

[5] *See, e.g.*, *In re: General Motors LLC CP4 Fuel Pump Litigation* Complaint ¶ 7.

various motor vehicle manufacturer defendants became aware of the defect years ago, but concealed their knowledge from safety regulators and the public."). That some plaintiffs' CP4 fuel pumps were designed and installed into different makes and models of trucks does not defeat the commonality of the issues. Last month, the Panel created centralized product liability actions challenging the safety of a component inserted into different makes and models of vehicles. *See In re: ZF-TRW Airbag Control Units Prods. Liab. Litig.*, MDL No. 2905, Doc. 112 (J.P.M.L. Aug. 7, 2019) (granting centralization involving "alleged defect – which may affect more than twelve million vehicles made by ***multiple automakers***, including FCA, Honda, Hyundai/Kia, Mitsubishi, and Toyota. . . .") (emphasis added).

Here, the risk of inconsistent pretrial rulings regarding common factual and legal issues is high. Again, all of the CP4 Defect Actions involve virtually the same factual allegations and legal issues relevant to the underlying origin of the product defect—the inability of the Affected Vehicles to withstand U.S. diesel fuel. Section 1407 does not require a complete or even a majority of common issues. *See In re: 100% Grated Parmesan Cheese Mktg. and Sales Practices Litig.*, 201 F. Supp. 3d at 1378; *see also In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d at 1381.

Indeed, where a product defect alleged is similar yet not identical, this Panel has approved MDL transfer. *See, e.g.*, *Kesler v. Takata*, No. 1:16-00191, MDL No. 2599, Doc. 71 (J.P.M.L Feb. 2, 2017). In *Kesler*, the Panel rejected GM's arguments that non-deployment of the vehicles' airbags created separate factual issues not shared with those already in the previously-created MDL. *Id.* at 2 ("GM also argues that to the extent that plaintiff alleges that she was injured by the non-deployment of the vehicle's airbag, the action does not share factual issues with those already in the MDL. These arguments are not convincing."). In doing so, the Panel compared the *Kesler*

and other MDL complaints in concluding that similar factual issues existed. The Panel observed that the "*Kesler* complaint plainly alleges that the airbag in that vehicle was defective for the same principal reason that the airbags in the MDL are alleged to be defective." *Id.* (emphasis added).

The same reasoning applies here. The Related Actions against Ford "share factual questions arising from allegations that certain [Bosch]-manufactured [fuel pumps] are defective, . . . resulting in injury or even death" with the actions against GM and FCA. *See id.* (quoting *In re: Takata Airbag Prods. Liab. Litig.*, 84 F. Supp. 3d at 1372). And the Related Actions against GM involve those same questions. The same defect is at play—the Bosch-supplied CP4 pump's inability to withstand the specifications of U.S. diesel fuel. *See supra*, note 4. Accordingly, like in *Kesler* and the Takata MDL generally, the Related Actions against Ford, GM, and FCA *all* center around the fact that "[Bosch]-manufactured [fuel pumps] are defective in that they . . . eject metal debris" into the pump. *See In re: Takata Airbag Prods. Liab. Litig.*, 84 F. Supp. 3d at 1372. In sum, the Related Actions plainly involve the same questions of law and fact.

To be clear, the CP4 Plaintiffs' claims against each of the "Big 3" U.S. automakers involve the same product—Bosch-supplied CP4 fuel injection pumps. The slight design or manufacturing differences needed for the CP4 pump to be fitted in various models of a Ford versus a GM versus an FCA truck is immaterial to the CP4 Plaintiffs' allegations of fatal defect. Both actions arise out of the same product defect—the CP4 pump's insidious decomposition and depositing of harmful metal shavings and debris throughout the fuel injection system and engine until the engine catastrophically fails. In these circumstances, an industry-wide MDL is warranted. *See In re: ZF-TRW Airbag Control Units Prods. Liab. Litig.*, MDL No. 2905, Doc. 112 (J.P.M.L. Aug. 7, 2019); *see also In re: General Motors LLC Ignition Switch Litig.*, 26 F. Supp. 3d 1390 (J.P.M.L. 2014) (centralizing products liability cases involving multiple makes and models of vehicles all

containing the same defect); *In re: Takata Airbag Prods. Liab. Litig.*, 84 F. Supp. 3d. 1371 (J.P.M.L. 2015) (same); *In re: Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004) (stating "transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer").

GM and Ford have previously asserted that the claims against each automaker involve entirely different products. *See Ginebra v. GM LLC*, No. 1:18-cv-25209-FAM, Docs. 13, 22 (S.D. Fla.). The Defendants are misguided. A catastrophic failure occurs because the Bosch-supplied CP4 high-pressure fuel injection pump, which came standard in the Affected Vehicles, is incompatible with American diesel fuel—no matter whether Ford, GM, or FCA manufactured the vehicle. Again, the prevalence of common questions of law and fact underlying the product defect at issue favors consolidation. *See, e.g.*, *Burrow v. Forjas Taurus S.A.*, Case No. 16-Civ-21606-TORRES, 2018 WL 809439, at *5 (S.D. Fla. Feb. 9, 2018) (emphasizing the common questions of law and fact in cases involving different models of revolvers that contained the same defect).

Furthermore, GM's and Ford's prior argument recasts the CP4 Plaintiffs' allegations. The CP4 Plaintiffs allegations are not that the CP4 pump is defective as to its interaction with the Chevrolet 2500HD Sierra, for instance; but rather, the CP4 pump is unable to handle *any* of the diesel fuel that Ford, GM, and FCA know is available to U.S. consumers (and intend for consumers to use in the Affected Vehicles) regardless of the vehicle in which it sits. The fact that Ford, GM, and FCA all chose Bosch's CP4 pump strengthens the case for industry-wide consolidation.

Of course, while each automaker's communications with Bosch might be different, the parameters of relevant information will be the same against Ford, GM, and FCA. Indeed, *In re: CP4 Fuel Pump Litigation* MDL would center around (1) the American auto industry's knowledge and (2) the science of the CP4 fuel pump's incompatibility with American diesel fuel

specifications. As such, centralization in an MDL is appropriate. *See In re: Fluroquinolone Prods. Liab. Litig.*, 122 F. Supp. 3d 1378 (J.P.M.L. 2015) (holding that issues concerning general causation, background science, and regulatory history would be common to all actions); *see also In re: Cutter Labs., Inc. "Braunwald-Cutter" Aortic Heart Valve Prods. Liab. Litig.*, 465 F. Supp. 1295, 1297 (J.P.M.L. 1979) (holding common questions "concerning design, development, . . . and marketing" of a product, including the manufacturer's "knowledge of the allegedly defective condition" favored centralization). Thus, the substantial overlap of common questions of law and fact greatly outweighs any slight differences between the cases against Ford, GM, and FCA. *See In re: Takata Airbag Prods. Liab. Litig.*, 84 F. Supp. 3d at 1372; *see also In re: 100% Grated Parmesan Cheese Mktg. and Sales Practices Litig.*, 201 F. Supp. 3d at 1378 ("We are confident that the transferee judge can accommodate any issues involving the different products and defendants, including confidentiality and defendant-specific resolutions, in a manner that guarantees the just and efficient resolution of all cases.").

### B.     Just and Efficient Resolution of the Related Actions

Due to the numerous common issues shared by the Related Actions, "[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary." *In re: Takata Airbag Prods. Liab. Litig.*, 84 F. Supp. 3d at 1372; *see also In re: Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*, 936 F. Supp. 2d 1379, 1380 (J.P.M.L. 2013) ("Centralization will . . . prevent inconsistent pretrial rulings (on *Daubert* issues and other matters). . . ."); *In re: Aftermarket Auto. Lighting Prod. Antitrust Litig.*, 598 F. Supp. 2d 1366, 1367 (J.P.M.L. 2009) (stating that consolidation would minimize the overall expense for all parties involved).

For example, the Related Actions share factual questions relating to the Defendants' conduct and each seeks to certify statewide classes under Rule 23 of the Federal Rules of Civil Procedure. Centralization will avoid the risk of inconsistent treatment of class certification involving essentially the same issues of fact and law. *In re: ZF-TRW Airbag Control Units Prods. Liab. Litig.*, MDL No. 2905, Doc. 112 (J.P.M.L. Aug. 7, 2019) (finding that centralization would eliminate "the possibility of inconsistent rulings on class certification, *Daubert* motions, and other pretrial matters, and conserve judicial and party resources"). Moreover, if the cases are centralized, the parties will need to brief these issues only once, conserving the resources of the parties, their counsel, and the judiciary. *See, e.g.*, *In re: 100% Grated Parmesan Cheese Mktg. and Sales Practices Litig.*, 201 F. Supp. 3d at 1378 ("A single MDL is the most appropriate vehicle for resolving defendants' challenges to the validity of laboratory testing at issue, the anticipated common third-party discovery, ***discovery of common suppliers, and management of the competing putative classes***.") (emphasis added).

Moreover, a singular transferee judge is in the best position to address unique factual issues concerning the Bosch-supplied CP4 pump. Additional allegations or legal theories will not prevent transfer where, as here, the actions arise from a common factual core. *See In re: 100% Grated Parmesan Cheese Mktg. and Sales Practices Litig.*, 201 F. Supp. 3d at 1378 (finding that centralization will "prevent inconsistent pretrial rulings, including with respect to class certification and *Daubert* motions; and conserve the resources of the parties, their counsel, and the judiciary").[6]

---

[6] *See also In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) ("Transfer under Section 1407 does not require a complete identity of common factual issues or parties as a prerequisite to transfer, and the presence of additional facts or differing legal theories is not significant where, as here, the actions still arise from a common factual core.").

The transferee judge has broad discretion to employ a variety of pretrial techniques, such as separate discovery or motion tracks, to address any differences among the cases and efficiently manage the various aspects of the litigation.[7] The Related Actions should be centralized because they overwhelmingly share common issues with respect to Bosch's design, testing, marketing, and promotion of the CP4 pump to automakers. Accordingly, centralization under Section 1407 will promote judicial efficiency.

Centralization at this stage will achieve precisely the type of efficiencies the multidistrict litigation process was designed to generate. *See, e.g.*, *In re: Fluroquinolone Prods. Liab. Litig.*, 122 F. Supp. 3d at 1380 ("Centralization will reduce potentially costly expert discovery."). "Centralization works best when a group of actions are all in the initial phases of discovery and motion practice." Hon. John G. Heyburn, II, *A View from the Panel: Part of the Solution*, 82 Tul. L. Rev. 2225, 2238 (2008). As the Related Actions are still in their initial stages, potential inefficiencies can be avoided by immediate transfer and coordination or consolidation.

## IV.   CENTRALIZATION IS MOST APPROPRIATE IN ONE JUDICIAL DISTRICT

### A.   Northern District of California

The Northern District of California is in the best position to handle this MDL. There are many distinguished jurists within the Northern District of California who are highly experienced with MDL and other complex cases. Specifically, the trial judge assigned to one of the moving parties' cases, the Honorable Jon S. Tigar, is presiding over the most advanced case involving the

---

[7] *See In re Walgreens Herbal Supplements Mktg. & Sales Practices Litig.*, MDL No. 2619, 2015 U.S. Dist. LEXIS 77377, at *7 (J.P.M.L. June 11, 2015). Moreover, transferee judges in product liability MDLs routinely employ case management tools such as separate discovery tracks to handle the different issues that arise in such cases. *See, e.g.*, *In re Zoloft (Sertranline) Hydrochloride Prods. Liab. Litig.*, 856 F. Supp. 2d 1347, 1348 (J. P.M.L. 2012) ("[W]e have found that products liability cases often present some individual factual issues, but that coordination of discovery across all actions, with the use of common and individual discovery tracks, can offer efficiencies to all parties.").

CP4 Defect. Indeed, *In re: General Motors LLC CP4 Fuel Pump Litigation* is the only action that has determined the sufficiency of plaintiffs' allegations with any finality. As *Dawson* will undoubtedly involve additional motion practice, *In re: General Motors LLC CP4 Fuel Pump Litigation* will quickly and efficiently advance the litigation because the Pleadings in that case have been tested, and the case is proceeding on those pleadings. This factor favors centralizing the Related Actions before Judge Tigar. *See, e.g.*, *In re: Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices and Prods. Liab. Litig.*, 220 F. Supp. 3d 1356, 1359 (J.P.M.L. 2016) (selecting the judge "presiding over the most procedurally-advanced action").

Moreover, other factors the Panel regularly considers also point to the Northern District of California as the best choice for MDL transfer. First, the Northern District of California is the most convenient for the parties and their counsel. Lawyers for plaintiffs in the Eastern District of Michigan, Northern District of California, Southern District of Florida, and Southern District of Texas cases are located in California.[8] The Northern District of California is also convenient for movants' counsel and any additional counsel—no matter where they are located. It is served by three international airports located in San Francisco, San Jose, and Oakland, and the surrounding area possesses an abundance of amenities, including hotels, rental cars, and any needed litigation resources. In sum, it is "an easily accessible, metropolitan district that is well equipped with the resources that this complex docket is likely to require."[9]

---

[8] Plaintiffs' counsel in those cases, Hagens Berman Sobol Shapiro LLP, Morgan & Morgan, P.A., and Gibbs Law Group LLP, have offices throughout California. Furthermore, the automakers' counsel also have offices in the Northern District of California.

[9] *In re Compression Labs, Inc., Patent Litig.*, 360 F. Supp. 2d 1367, 1369 (J.P.M.L. 2005); *see also In re Roundup Prods. Liab. Litig.*, 214 F. Supp. 3d 1346, 1348 (J.P.M.L. 2016) ("The Northern District of California is both convenient and easily accessible for all parties, and we are convinced that the district has the necessary judicial resources and expertise to efficiently manage this litigation.").

### B.     The Honorable Jon S. Tigar

Second, the Honorable Jon S. Tigar can manage this MDL effectively. *See* Francis E. McGovern & John G. Heyburn, II, *Evaluating and Improving the MDL Process*, 38 LITIGATION 26-32 (Spring 2012) ("The choice of a transferee judge is subject to few criteria other than the relatedness of the location and our belief in the ability and experience of that judge."). Judge Tigar has been a federal judge for nearly six years and served as a California state court judge for ten years prior to his appointment to the federal bench.

Judge Tigar has presided over numerous class action lawsuits filed against automakers for defective and unreasonably dangerous component parts. *See Deras v. Volkswagen Grp. of Am., Inc.*, No. 3:17-CV-05452 (N.D. Cal.) (alleging defective factory-installed sunroof that "spontaneously shatters"); *see also Aberin v. Am. Honda Motor Co., Inc.*, No. 3:16-CV-04384 (N.D. Cal.) (alleging defect in the HandsFreeLink Bluetooth pairing whereby the device drains the battery which results in electrical failures and malfunctions); *MacDonald v. Ford Motor Co.*, No. 3:13-CV-02988 (N.D. Cal.) (alleging dangerous design and failure to warn of defective motor electronic cooling system with defective coolant pumps).

Moreover, Judge Tigar gained valuable experience presiding over the latter stages of *In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL 1917,[10] and is well-versed in the nuances of multidistrict litigation. He will guide this complex products liability case on a fair and expeditious course.

---

[10] *In re: Cathode Ray Tube (CRT) Antitrust Litigation* was "reassigned to the Honorable Jon S. Tigar for coordinated or consolidated pretrial proceedings" as that MDL was in the waning stages. *See In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917, Doc. 5 (J.P.M.L. Nov. 2, 2015). Since then, Plaintiffs have settled with the majority of defendants. *See* http://www.crtdirectpurchaserantitrustsettlement.com/. As a result, that case should not overwhelm Judge Tigar's ability to effectively manage this MDL.

Considered together, the factors routinely considered by the Panel demonstrate that the clear choice for this MDL is before Judge Tigar in the Northern District of California. The other districts in which Related Actions are pending are less advanced than the action before Judge Tigar. *See In re: Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices and Prods. Liab. Litig.*, 220 F. Supp. at 1359 (selecting the judge "presiding over the most procedurally-advanced action"); *In re: Waste Mgmt., Inc. Sec. Litig.*, 177 F. Supp. 2d 1373, 1374 (J.P.M.L. 2001). And they are far less convenient for the Parties and their counsel.[11] Therefore, the CP4 Plaintiffs respectfully request that the Panel grant this motion and transfer the Related Actions to the Northern District of California for coordinated or consolidated pretrial proceedings before the Honorable Jon S. Tigar.

### C.    The Eastern District of Michigan is the Second Best Forum for this MDL

Alternatively, the Eastern District of Michigan is an appropriate forum for centralization of the CP4 Defect Actions. The Eastern District of Michigan is home to all three Defendants. *See In re: FCA US LLC Monostable Elec. Gearshift Litig.*, 214 F. Supp. 3d 1354 (J.P.M.L. 2016) (centralizing in the Eastern District of Michigan because the defendant's headquarters were located in the district and decisions relating to the defect emanated from there); *see also In re Aftermarket Auto. Lighting Prod. Antirust Litig.*, 598 F. Supp. 2d at 1368 (transferring litigation to where "several defendants are headquartered" because "pertinent documents and witnesses are likely located there").

Dated: August 21, 2019.                              Respectfully submitted,

                                                     HILLIARD MARTINEZ GONZALES LLP

                                                     By:    */s/ Robert C. Hilliard*

---

[11] For example, flight options from Seattle, Washington, where certain movants' counsel is located, to the Midwest and Southeast are very limited as compared to the Northern District of California.

Robert C. Hilliard
HILLIARD MARTINEZ GONZALES LLP
719 S. Shoreline Blvd.
Corpus Christi, TX 78401
Tel: (361) 882-1612
Fax: (361) 882-3015
Email: bobh@hmglawfirm.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292
Fax: (206) 623-0594
Email: steve@hbsslaw.com

Andrew Parker Felix, Esq.
Branden Weber, Esq.
MORGAN & MORGAN, P.A.
20 North Orange Ave., Ste. 1600
P.O. Box 4979
Orlando, FL 32801
Tel: (407) 244-3204
Fax: (407) 245-3334
Email: Andrew@forthepeople.com
Email: bweber@forthepeople.com

*Attorneys for Plaintiffs Tyler Allen Click, Troy
Bowen, Bailey Henderson, Ethan Galan, Luis G.
Ochoa Cabrera, Homero Medina, Michael Guidroz,
Scott A. Hines, Bryan J. Tomlin, Quentin Alexander,
Jacqueline Bargstedt, Eric Stevens, Darren Fulton,
Kevin Lee Berry, Brian G. Wilson, Willie Porche,
Amber Smith, Matthew H. Clough, Curtis McNeal
Mertz, James Higdon, Joseph Sawicki, James
Crowell, Jr., Warren Story, Christopher Moonan,
Sean T. Smith, Isaiah Rudy, Sean M. Buob, Richard
Samson, Ryan Arthur Jensen, Anthony Raymond
Smith, Bradley Rice, Bruce K. Garlock, Chris S.
McAlister, Colby Barry, Douglas Hughes, Geoff
Cochems, John Thomas White, Kevin Allen Lawson,
Kevin Sutherland, Michael L. McCoy, Milton Leon
Huss, Jr., Stacy Wade Sizelove, Thorin Jay Askin,
Ryan Maduro, Michele Diniz, Brandon Tirozzi,
Calvin Smith, Frank Ginebra, Eileen R Van Fossen,
James Aaron Aukes, Christafer Michael Wren,*

*Daniel B Bass, Wayne R. Gilbert, Jr., Melody Anne Dearborn, Duane Dee Meske, Ignacio Centeno, Nicholas Allen Miller, Bill Hoffman, Gordon Mac Johnson, Robert D. Peters, Paul A Ponteaux, Sr., Philip A. Adams, Ricky J Tremblay, Michael Corbett, Gina Carter, Eric Mobley, Gregory R. Nix, David Lyndon Johns, Robert W Kirby, Gustavo Nicolas Gonzalez, Jace Reyes, Mark D. Chapman, Leroy Gwinn, Jr., William McDuffie, Gary Godwin, Robert Hoag, Clay Kincheloe, Bryan Joyce, Tim Taylor, Mark William Droesser, Jeffrey A. Ford, Jeffrey Fowlkes, Matthew Parker and Trevor Wentz*